2025 IL App (1st) 231627-U

No. 1-23-1627

Order filed December 11, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LANA L. GREY, LOMDEN DISTRIBUTORS, INC. and LACERTA, INC., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22 M 1450180 |
| CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS and DEPARTMENT OF STREETS AND SANITATION, | ) ) ) ) ) ) | Honorable Leonard Murray, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's judgment affirming the administrative agency orders finding violations of the Chicago Municipal Code is affirmed.

¶ 2    On October 29, 2021, defendant-appellee, the City of Chicago Department of Streets and Sanitation (the City) cited Lacerta, Inc. (Lacerta) and Lana L. Grey, for having high weeds on their property on August 10, 2021, in violation of the Chicago Municipal Code. Ms. Grey and Lacerta

requested an administrative hearing, arguing they were not the owners of the property and that Lacerta should be dismissed as a party since it had dissolved more than five years before the violation had occurred. During the pendency of the proceedings, on September 27, 2022, the City issued a second violation for high weeds against Lacerta and Ms. Grey. Prior to the hearing on the merits, the City filed a motion to voluntarily dismiss Lacerta, which was granted, and to implead Lomden Distributors, Incorporated (Lomden) as the other owner of the property in question. On October 20, 2022, the City of Chicago Department of Administrative Hearings (Department of Administrative Hearings) found that Ms. Grey and Lomden were the owners of the property and that they were liable for the violations. The plaintiffs-appellants, Lomden, Lacerta, and Ms. Grey, filed a complaint for administrative review in the circuit court. The circuit court affirmed the administrative agency. On appeal, plaintiffs argue the Department of Administrative Hearings erred by: (1) finding Lomden and Ms. Grey were the owners of the property since they abandoned the property or alternatively disclaimed their interest in it; and (2) denying Lacerta's motion to dismiss itself as a party in the circuit court. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                   BACKGROUND

¶ 4      On August 10, 2021, an inspector from the City determined that the weeds on a property located at 329 West 105th Street Chicago, Illinois were taller than 10 inches in height, which violated the Chicago Municipal Code. Cook County property records showed Lacerta purchased the property on February 21, 2002, and never sold or otherwise transferred its ownership. Ms. Grey was listed as president of Lacerta on the Illinois Secretary of State's website. The inspector issued a citation to Lacerta and Ms. Grey, in her capacity as president of Lacerta, the owners of that

property.

¶ 5     Both Lacerta and Ms. Grey contested the violations before the Department of Administrative Hearings, asserting that they no longer had any ownership interest in the property. The administrative law judge (ALJ) continued the matter to "the ownership call." Prior to that hearing date, on April 5, 2022, Lomden and Grey filed documents purporting to disclaim their interest in the property with the Cook County Clerk. On April 6, 2022, the plaintiffs emailed the City of Chicago identifying Lomden as Lacerta's sole shareholder and advising the City that Lomden and Ms. Grey had filed disclaimers of any and all interest to the subject property. The case was continued to allow the City to investigate the newly received information regarding ownership and present relevant case law.

¶ 6     On September 27, 2022, following a second inspection, the City again determined that weeds on the property exceeded ten inches and issued a second citation to Ms. Grey and Lacerta. On October 20, 2022, the parties agreed to consolidate the two sets of citations for hearing purposes. On that date, the City moved to implead Lomden and voluntarily dismiss Lacerta. Lacerta objected, arguing that by law it was entitled to a ruling on the merits to its motion to dismiss as Lacerta had dissolved more than five years prior to receiving the first citation and as a result was not the owner of the property. The ALJ granted the City's motion stating that the Administrative Hearing Code controlled, not the Illinois Code of Civil Procedure.

¶ 7     During that hearing, the City argued that Lomden and Ms. Grey were the owners. It asserted that Lacerta was the owner of record from 2002 until its dissolution on July 8, 2016. By operation of law, during Lacerta's five-year wind up, its corporate assets were placed in an equitable trust for Lacerta's shareholders subject to any creditors. At the conclusion of the wind-up period on July

8, 2021, since no creditor claims were filed against Lacerta, Lacerta ceased to exist and legal title of its assets passed to Lomden as Lacerta's sole shareholder. At that point, the City argued, Lomden became the legal owner of the real estate property in question. In support of its position, the plaintiffs argued that that the property had been abandoned and that their disclaimers of interest relieved them of any responsibility for compliance with the Chicago Municipal Code.

¶ 8      As to the plaintiffs' disclaimer argument, the City asserted that Lomden was barred from disclaiming the property because it had not divested itself of the shares in Lacerta nor property prior to the issuance of the citations. Lomden subsequently dissolved and its owners were Nathaniel Grey and Ms. Grey, who then became the legal owners of the property. The City stated that Ms. Grey was liable as an owner of the property because she was the president of Lomden. As president, she was entitled to manage or control the property, which is an indicia of ownership.

¶ 9      In support of plaintiffs' position, the plaintiffs argued that the property had been abandoned and that their disclaimers of interest relieved them of any responsibility for compliance with the Chicago Municipal Code. The ALJ rejected these arguments, ruling that both Lomden and Ms. Grey qualified as owners under the applicable provisions of the Chicago Municipal Code. The parties stipulated that the weeds had, in fact, exceeded the Chicago Municipal Code's height limit on the dates in question. On October 20, 2022, the ALJ imposed the minimum fine of $600 for each of the two violations.

¶ 10    On November 22, 2022, Lomden, Lacerta, and Ms. Grey filed a complaint for administrative review with the Circuit Court of Cook County. The complaint alleged that the Department of Administrative Hearings erred by finding that Lomden and Ms. Grey were liable for the violations and allowing the City to voluntarily dismiss Lacerta. The City responded that

Lomden was an owner because it was the legal title holder at the time of the violations. It argued that Ms. Grey was an owner because she was entitled to manage and control the property as the president of Lomden. The City concluded by arguing that, under the rules governing the Department of Administrative Hearings, the City was entitled to make technical amendments to the pleadings at any time prior to a final determination. Therefore, the ALJ was permitted to voluntarily dismiss Lacerta. On August 15, 2023, the circuit court affirmed the decision of the Department of Administrative Hearings. On September 8, 2023, Ms. Grey, Lomden, and Lacerta filed a timely notice of appeal.

¶ 11                                         ANALYSIS

¶ 12     We note that we have jurisdiction to consider these matters, as the plaintiffs filed a timely notice of appeal following the trial court's judgment. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 13     This court reviews the decision of the administrative agency, not the judgment of the circuit court. *Hoffman v. Orland Firefighters' Pension Board*, 2012 IL App (1st) 112120, ¶ 18. "On administrative review of an agency decision, a court may encounter three types of questions, each with different degrees of deference." *Marathon Petroleum Company LP v. Cook County Department of Revenue*, 2022 IL App (1st) 210635, ¶ 24. This court will reverse the factual conclusions of an administrative agency only if they are against the manifest weight of the evidence. *Cinkus v. Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). "An administrative agency's factual findings are against the manifest weight of the evidence if no trier of fact could have agreed with the agency or an opposite conclusion than that reached by the agency is clearly evident." *In re Fatima A.*, 2015 IL App (1st) 133258, ¶ 58. "An agency's findings

and conclusions on questions of fact are deemed *prima facie* true and correct, and a reviewing court will not overturn those findings unless they are against the manifest weight of the evidence." *Marathon Petroleum Company LP*, 2022 IL App (1st) 210635, ¶ 25. However, an agency's findings on questions of law are reviewed *de novo*. *Marathon Petroleum Company LP*, 2022 IL App (1st) 210635, ¶ 25. Mixed questions of law and fact are reviewed under the clearly erroneous standard, and a reviewing court finds a decision clearly erroneous when it "is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211.

¶ 14 The plaintiffs, Lacerta, Lomden, and Ms. Grey, assert that Lacerta was divested of its ownership of the property after the wind-up period and that neither Lomden nor Ms. Grey became the subsequent owners of the property. They argue that since the property was not claimed by Lomden, the property was deemed abandoned after the involuntary dissolution.

¶ 15 "In Illinois, the legislature has established a five-year period within which a dissolved corporation must wind up its affairs." *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1057 (2005). "At the end of that five-year period, subject to the rights of creditors, a corporation's assets devolve, by operation of law, to its shareholders." *Conley*, 356 Ill. App. 3d at 1057. Ownership under the Chicago Municipal Code is defined as "any person having a legal or equitable ownership interest in the *premises* *** with or without actual possession; *** any *person* having charge, care, or control of the *premises* *** as an *** agent of an *owner*; and any *person* responsible for or entitled to manage *** or control the *premises*." Chicago Municipal Code § 14A-2-202 (amended June 12, 2024).

¶ 16 There is no dispute that in July 2016 Lacerta owned the property in question and the parties

concede that weeds on the property had grown to a height in violation of the Chicago Municipal Code. Lacerta dissolved on July 8, 2016, without any known creditors and with Lomden as the sole shareholder. Upon the conclusion of the five-year wind up period, Lomden, as the sole shareholder, became the owner of the property, and Ms. Grey was the president of Lomden. *Conley*, 356 Ill. App. 3d at 1057. Pursuant to the Chicago Municipal Code, Ms. Grey is an owner because as the president of Lomden, she is an agent of the corporation and she controls any property or assets that Lomden owns. Chicago Municipal Code § 14A-2-202 (amended June 12, 2024). The law does not require acceptance of the company's assets for them to pass to their shareholders, despite Ms. Grey's and Lomden's assertions. *Shute v. Chambers*, 142 Ill. App. 3d 948, 952 (1986) ("Whatever assets a dissolved corporation has belongs to the stockholders subject to the rights of creditors."). As a result, both were the owners of the property, Lomden as shareholder and Ms. Grey as president of Lomden.

¶ 17    Turning to Ms. Grey and Lomden's abandonment argument, they cite the Unclaimed Property Act (765 ILCS 1026/15-201 (West 2020)) for the proposition that property unclaimed by the owner a year after dissolution of a business is abandoned, making them no longer owners.

¶ 18    Section 15-201 of the Unclaimed Property Act (765 ILCS 1026/15-201 (West 2020)) states "The following property is presumed abandoned if it is unclaimed by the apparent owner during the period specified below: *** Property distributable by a business association in the course of bankruptcy or dissolution *** one year after the property becomes distributable." "The purpose of the [Unclaimed Property] Act is to give custody of certain enumerated property to the state when the property's owner 'does not appear to be aware of its existence and cannot be located." *Canel v. Topinka*, 212 Ill. 2d 311, 324 (2004).

¶ 19 Under the Unclaimed Property Act, however, ownership of the property does not change, only the custodian. *Insurance Company of North America v. Knight*, 8 Ill. App. 3d 871, 876 (1972) ("[T]he State takes custody for the owner."). "A person claiming to be the owner of property held under this Act by the [State] *** may file a claim for the property on a form prescribed by the [State]." 765 ILCS 1026/15-903(a) (West 2020). The State becomes the custodian of the property but never the owner. In short, the owner retains its ownership interest in the property and may claim the property at any time. Therefore, even if the property was considered abandoned, as we have established Lomden and Ms. Grey, as an agent of Lomden, remained the owners of the property. Due to that ownership, they were responsible for maintaining the property and making sure any weeds did not grow beyond the acceptable limits.

¶ 20 Ms. Grey and Lomden argue, alternatively, that they disclaimed their interest in the property on April 7, 2022, when they filed disclaimers of interest under 755 ILCS 5/2-7(a) (West 2020).

¶ 21 755 ILCS 5/2-7(a) (West 2020) states:

> "A person to whom any property or interest therein passes, by whatever means, may disclaim the property or interest in whole or in part by delivering or filing a written disclaimer as hereinafter provided. A disclaimer may be of a fractional share or undivided interest, a specifically identifiable asset, portion or amount, any limited interest or estate or any property or interest derived through right of survivorship."

The primary objective of statutory construction is to discern the legislature's intent, and the best way to ascertain that intent is the plain language of the statute. *Bank One Milwaukee v. Sanchez*,

336 Ill. App. 3d 319, 323 (2003). The terms in a statute are to be considered in conjunction with every other section of the statute, not in a vacuum. *In re Estate of Crawford*, 2019 IL App (1st) 182703, ¶ 30.

¶ 22     Ms. Grey and Lomden cite portions of the Probate Act of 1975 (Probate Act) to argue that they can disclaim their interest in the property. The disclaimers of interest citation arises from Article II of the Probate Act, which specifically covers "descent and distribution" and how the real and personal estate of a decedent is distributed to a descendant. The property at issue was not the property of a decedent nor subject to distribution under the Probate Act. The Probate Act does not encompass nor govern how property of a dissolved corporation passes to its shareholders. Finding otherwise would require that one read a single section and particular words out of context, ignoring the remainder of the entire Probate Act.  The terms in a statute are to be considered in conjunction with every other section of the statute, not in a vacuum. *In re Estate of Crawford*, 2019 IL App (1st) 182703, ¶ 30.

¶ 23     Therefore, the ALJ did not err by finding that Ms. Grey and Lomden did not disclaim their interest in the property. However, assuming *arguendo* that we believed it was possible for a shareholder to relinquish property by filing a disclaimer of interest, the result would still be the same.

¶ 24     "The right to disclaim property or a part thereof or an interest therein shall be barred by *** an acceptance of the property, part or interest by the disclaimant or his representative." 755 ILCS 5/2-7(e) (West 2020). "An acceptance of property or an interest in property shall include the taking of possession." 755 ILCS 5/2-7(e) (West 2020).

¶ 25     Ms. Grey and Lomden argue that they never accepted the property. As stated, by law, a

shareholder acquires the assets of a dissolved company after the five-year wind up period as long as they maintain their possession of their shares and there are no claims by a creditor. *Chambers*, 142 Ill. App. 3d 948, 952. There is nothing that the shareholder must do to accept ownership of the property. Therefore, by maintaining its share Lomden acquired the property and by keeping its shares it took possession of the property and thus accepted the property. As a result, Lomden and Ms. Grey, as president of Lomden, could not disclaim their interest in the property.

¶ 26     The plaintiffs' final argument is that the circuit court erred by denying Lacerta's motion to dismiss on the merits. There are multiple factual issues with that argument. From the record, it does not appear that a motion to dismiss Lacerta was filed in the circuit court or denied by the circuit court. Liberally interpreting plaintiffs' argument, we believe they are focusing on the motion to dismiss filed in the administrative hearing but the motion to dismiss was not denied by the ALJ. Instead, the City's motion to voluntarily dismiss was granted, which made Lacerta's motion essentially moot and it was not considered. While we understand the distinction in the motions, namely Lacerta wanted to avoid future violations for a property that it allegedly did not own after July 8, 2021, this court cannot deal with issues that are not before us. As a result, we cannot consider this issue.

¶ 27     Based on Lomden's and Ms. Grey's ownership of the property and their inability to abandon or disclaim their interest in the property, we find that the ALJ did not err in its ruling, nor did the trial court err in its judgment.

¶ 28                              CONCLUSION

¶ 29     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County affirming the Department of Administrative Hearing's decision.

¶ 30     Affirmed.